*19*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| NATIONAL WILDLIFE FEDERATION; and LONE TREE COUNCIL, ) ) ) ) | **06-12423** |
| Plaintiffs, ) ) | CASE NO. ____  _____  _____ |
| vs. ) ) | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| STEPHEN L. JOHNSON, in his official capacity as ) Administrator of the United States Environmental ) Protection Agency; BHARAT MATHUR, in his ) official capacity as Acting Regional Administrator ) of the United States Environmental Protection ) Agency, Region 5; and UNITED STATES ) ENVIRONMENTAL PROTECTION AGENCY, ) ) | **DAVID M. LAWSON** JUDGE ____ MAGISTRATE JUDGE ____ |
| Defendants. ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs National Wildlife Federation and Lone Tree Council allege as follows:

### INTRODUCTION

1.    Stephen L. Johnson, Administrator ("the Administrator") of the United States Environmental Protection Agency ("EPA"), Bharat Mathur, Acting Regional Administrator ("the Regional Administrator") of EPA Region 5, and EPA (collectively, "Defendants") failed to comply with the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1251 *et seq.*, and the Act's implementing regulations in approving (a) a variance implementation procedure promulgated by the State of Michigan,  (b) a revision to the State of Michigan's water quality standards, and (c) a revision to the State of Michigan's National Pollutant Discharge Elimination System ("NPDES") program.

1

2.      Specifically, Defendants approved Michigan's promulgation of a variance implementation procedure even though it is less protective than the variance implementation procedure prescribed by the Act and its implementing regulations.

3.      In addition, Defendants approved Michigan's adoption of a multiple discharger mercury variance even though it renders the state's water quality standards and NPDES program less protective than the variance, "reasonable potential," and compliance schedule implementation procedures prescribed by the Act and its implementing regulations.

4.      Plaintiffs National Wildlife Federation and Lone Tree Council (collectively, "Plaintiffs") seek the following relief:

    (a) a declaration that Defendants violated their statutory and regulatory responsibilities under the Clean Water Act,

    (b) an order reversing and remanding to Defendants their approval of the State of Michigan's variance implementation procedure and directing them to follow the steps outlined by the Act and its implementing regulations in circumstances where a Great Lakes State fails to submit an implementation procedure that is consistent with the implementation procedure prescribed by the Act and its implementing regulations,

    (c) an order reversing and remanding to Defendants their approval of the State of Michigan's revision of its water quality standards, represented by the multiple discharger mercury variance, and directing them to follow the steps outlined by the Act and its implementing regulations in circumstances where the Regional Administrator disapproves a state submission of revised water quality standards,

    (d) an order reversing and remanding to Defendants their approval of the State of Michigan's revision of its NPDES program, represented by the multiple discharger mercury variance, and

2

(e) an order awarding the costs of litigation to Plaintiffs, including reasonable attorney and expert witness fees.

## JURISDICTION AND VENUE

5. The court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1361 (mandamus), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (judicial review of administrative action).

6. The court is authorized to grant the relief requested by 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 (declaratory relief); 28 U.S.C. § 2202 and Fed. R. Civ. P. 65 (injunctive relief); 5 U.S.C. § 706 (declaratory and injunctive relief); and 28 U.S.C. § 2412 (attorney fees and expenses).

7. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(e) because Plaintiff Lone Tree Council resides in this judicial district, a substantial part of the events or omissions giving rise to the claims occurred throughout Michigan, including in the counties served by this court, and Defendants are officers or employees of the United States and an agency of the United States.

## PARTIES

8. Plaintiff National Wildlife Federation ("NWF") is a nonprofit corporation organized and existing under the laws of the District of Columbia. NWF is a national organization with approximately 922,000 members nationwide, and approximately 34,000 members in Michigan. NWF's mission is to conserve natural resources and the wildlife that depends on such resources. NWF's members use and derive aesthetic enjoyment from wildlife and natural resources, including wetlands, streams, rivers, and lakes. NWF has its principal office in Virginia, and a Great Lakes office at 213 West Liberty Street, Suite 200, Ann Arbor, Michigan, 48104.

3

9.     Plaintiff Lone Tree Council ("LTC") is a Michigan non-profit corporation based in Bay City, Michigan. LTC has approximately seventy-five members. LTC's mission is to protect and preserve Michigan's natural resources, including clean water, especially within the Saginaw River watershed, and to promote environmental justice. Lone Tree's members use and derive aesthetic enjoyment from Michigan's natural resources, including wetlands, streams, rivers, and lakes.

10.    Defendants' approvals of Michigan's variance implementation procedure and multiple discharger mercury variance injured or adversely affected one or more members of Plaintiffs by (a) perpetuating the toxic pollution of Michigan streams, rivers, or lakes, which one or more members of Plaintiffs use as a source of food, for recreation, or for aesthetic enjoyment, or which they would use for such purposes but for the polluted condition of such waters or (2) increasing the likelihood that Michigan streams, rivers, or lakes will become or remain polluted by toxic substances, or (3) both, interfering with the use and enjoyment of such waters by one or more members of Plaintiffs.

11.    Plaintiffs bring this action on behalf of their members. The interests of Plaintiffs' members fall within the zone of interests protected under the Clean Water Act.

12.    Defendant Stephen L. Johnson is the Administrator of EPA, and is sued in his official capacity only. The Administrator is charged with the supervision and management of all EPA decisions and actions under the Act, including the approval or disapproval of state water quality standards, implementation procedures, and NPDES programs, which are the subject of this lawsuit.

13.    Defendant Bharat Mathur is the Acting Regional Administrator of EPA Region 5 EPA, which has its headquarters in Chicago, Illinois, and is sued in his official capacity only. The Regional Administrator of EPA Region 5 is charged with the supervision and management

4

of all EPA decisions and actions in Michigan under the Act, including the approval or disapproval of state water quality standards, implementation procedures, and NPDES programs, which are the subject of this lawsuit.

14.    EPA is the agency of the government of the United States responsible for the implementation of the Act, including the approval or disapproval of state water quality standards, implementation procedures, and NPDES programs, which are the subject of this lawsuit.

## STATUTORY AND REGULATORY BACKGROUND

15.    Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" and to achieve "water quality which provides for the protection and propagation of fish, shellfish, and wildlife, and provides for recreation in and on the water." 33 U.S.C. § 1251(a).

16.    To achieve the Act's goal of eliminating the discharge of pollutants into navigable waters, each state must establish ambient water quality standards for intrastate waters at levels necessary to protect the "public health or welfare, enhance the quality of water and serve the purposes of" the Act. 33 U.S.C. § 1313(c)(2)(A).

17.    The Act requires a state which revises or adopts a new water quality standard to submit the standard to EPA. 33 U.S.C. § 1313(c)(2); 40 C.F.R. § 131.20.

18.    EPA has a non-discretionary duty to review, and approve or disapprove a new or revised water quality standard. 33 U.S.C. § 1313(c)(3); 40 C.F.R. § 131.21. EPA must approve the standard within sixty days after the date of submission if the Agency determines that the standard meets the requirements of the Act. 33 U.S.C. § 1313(c)(3); 40 C.F.R. § 131.21(a)(1) & (b). If EPA determines that the standard is not consistent with the applicable requirements of the Act, the Agency must notify the state and specify the changes necessary to meet such requirements within ninety days after the date of submission. 33 U.S.C. § 1313(c)(3); 40 C.F.R.

5

§ 131.21(a)(2) & (b). EPA must promulgate a revised or new water quality standard if the state does not adopt the changes specified by the Agency within ninety days after the date of notification. 33 U.S.C. § 1313(c)(3).

19.     Also to achieve the Act's goal of eliminating the discharge of pollutants into navigable waters, Congress created the National Pollutant Discharge Elimination System ("NPDES"), prohibiting the discharge of any pollutant from a point source into navigable waters unless that point source receives a permit. 33 U.S.C. §§ 1311, 1342.

20.     NPDES permits must contain technology-based effluent limitations established by EPA and any more stringent limits, known as water quality-based effluent limitations ("WQBELs"), that are necessary to ensure that dischargers do not cause the quality of receiving waters to violate water quality standards. 33 U.S.C. §§ 1311, 1342.

21.     Specifically, WQBELs are necessary to control pollutants which the permitting agency "determines are or may be discharged at a level which will cause, have the reasonable potential to cause, or contribute to an excursion above any State water quality standard." 40 C.F.R. § 122.44(d)(1)(i).

22.     The Act authorized EPA to delegate to the states the authority to administer the NPDES program for discharges into navigable waters within their jurisdiction. 33 U.S.C. § 1342. To be eligible for delegation, a state NPDES program (a) must have adequate authority to implement, and (b) must be administered in conformance with, the Act and its implementing regulations, including regulations governing the determination of reasonable potential, the duty to incorporate WQBELs in NPDES permits, and establishing schedules for compliance with WQBELs. *Id.*; 40 C.F.R. § 123.25(a)(15) & (38).

23.     A state may revise its NPDES program. 40 C.F.R. § 123.62.

24.     EPA has a non-discretionary duty to review, and approve or disapprove an

NPDES program revision based on the requirements of the Act and 40 C.F.R. Part 123. 40
C.F.R. § 123.62(b)(3).

25.     Congress amended the Clean Water Act in 1990, directing EPA to publish water
quality guidance ("the Guidance") for all surface waters within the Great Lakes basin ("the Great
Lakes System"). 33 U.S.C. § 1268(c)(2). Congress directed EPA to include in the Guidance
"numerical limits on pollutants in ambient Great Lakes waters to protect human health, aquatic
life, and wildlife, and . . . guidance to the Great Lakes States on minimum water quality
standards, antidegradation policies, and implementation procedures for the Great Lakes System."
*Id.* at § 1268(c)(2)(A).

26.     The Act requires the Great Lakes States to "adopt water quality standards,
antidegradation policies, and implementation procedures for waters within the Great Lakes
System which are consistent with ... [the] guidance." 33 U.S.C. § 1268(c)(2)(C); *see also* 40
C.F.R. § 132.3.

27.     The Great Lakes States must submit to EPA the water quality standards,
antidegradation policies, and implementation procedures they adopt pursuant to the Guidance. 40
C.F.R. § 132.5(a).

28.     EPA has a non-discretionary duty to review, and approve or disapprove water
quality standards, antidegradation policies, and implementation procedures adopted pursuant to
the Guidance. 33 U.S.C. § 1268(c)(2)(C); 40 C.F.R. § 132.5(f).

29.     EPA has a non-discretionary duty to promulgate water quality standards,
antidegradation policies, and implementation procedures consistent with the Guidance to the
extent a Great Lakes State fails to adopt them. 33 U.S.C. § 1268(c)(2)(C); 40 C.F.R. §
132.5(f)(2).

## FACTS

30.     In 1973, EPA delegated to the State of Michigan the authority to administer the
NPDES program for discharges into navigable waters within in its jurisdiction.

31.     Pursuant to the 1990 amendment to the Clean Water Act, EPA established water
quality criteria for mercury, which the Agency designated as a toxic pollutant and a
bioaccumulative chemical of concern. 40 C.F.R. § 132.2 & Table 6; 40 C.F.R. § 401.15. EPA
established a mercury water quality criterion of 1.8 nanograms per liter ("ng/l") for protection of
human health, which EPA made applicable to all waters of the Great Lakes System. 40 C.F.R. §
132.4(d)(3), Table 3 (Water Quality Criteria for Protection of Human Health). In addition, EPA
established a mercury water quality criterion, or "Tier I criterion," of 1.3 ng/l for protection of
wildlife, which EPA also made applicable to all waters of the Great Lakes System. 40 C.F.R. §
132.4(d)(4), Table 4 (Water Quality Criteria for Protection of Wildlife), Appendix D.II. ("Table
4 of Part 132 ... contain[s Tier I] criteria calculated by EPA.").

32.     The State of Michigan adopted mercury water quality criteria of 1.8 ng/l for
protection of human health and 1.3 ng/l for protection of wildlife. MICH. ADMIN. CODE R §
323.1057(3), Tables 4 & 7.

33.     Pursuant to the 1990 amendment to the Act, EPA promulgated guidance to the
Great Lakes States on implementation procedures for the Great Lake System, including
procedures for (a) granting variances to water quality standards, (b) determining reasonable
potential to exceed water quality standards and incorporating WQBELs into NPDES permits,
and (c) establishing schedules for complying with WQBELs. 40 CFR § 132, Appendix F –
Procedure 2: Variances from Water Quality Standards for Point Sources ("Procedure 2"),
Procedure 5: Reasonable Potential to Exceed Water Quality Standards ("Procedure 5"), and
Procedure 9: Compliance Schedules ("Procedure 9").

34.     A Great Lakes State's procedure for granting a variance from water quality standards must "be consistent with (as protective as) the provisions in" Guidance Implementation Procedure 2. Procedure 2.

35.     The State of Michigan adopted a variance implementation procedure. MICH. ADMIN. CODE R § 323.1103.

36.     Michigan's variance implementation procedure is inconsistent with and less protective than Guidance Procedure 2 for the following reasons:

(a) Michigan's variance implementation procedure does not expressly prohibit a variance for recommencing Great Lake dischargers. MICH. ADMIN. CODE R § 323.1103(1)(b).

(b) Michigan's variance implementation procedure allows a variance to stay in effect until the NPDES permit is reissued or revoked, rather than expressly limiting the term of a variance to five years. MICH. ADMIN. CODE R. 323.1103(e).

(c) Michigan's variance implementation procedure allows a variance if stringent technological controls would result in "*unreasonable economic* effects on the discharger and affected communities" instead of "*substantial and widespread* economic *and social* impact." *Compare* MICH. ADMIN. CODE R § 323.1103(2)(f) *with* Procedure 2, § C.1.f. (emphases added).

(d) Michigan's variance implementation procedure does not specify that renewal of a variance may be denied if the permittee did not comply with the conditions of the original variance. MICH. ADMIN. CODE R § 323.1103(8).

(e) Michigan's variance implementation procedure allows the state to grant "multiple discharger variances." MICH. ADMIN. CODE R § 323.1103(9).

37.     A Great Lakes State's procedure for determining reasonable potential to exceed water quality standards and duty to incorporate WQBELs in NPDES permits must be "consistent

with (as protective as)" the provisions in Guidance Implementation Procedure 5. Procedure 5.

38.     To determine reasonable potential where representative, facility-specific effluent monitoring data samples are available, a permitting authority must follow a statistical procedure specified by Guidance Implementation Procedure 5 or an alternative statistical procedure which, among other things, accounts for limitations associated with sparse data sets. Procedure 5.

39.     The State of Michigan adopted a reasonable potential implementation procedure. MICH. ADMIN. CODE R § 323.1211.

40.     Michigan's reasonable potential implementation procedure specifies that "[c]hemical-specific water quality-based effluent limits (WQBELs) shall be incorporated into a national pollutant discharge elimination system (NPDES) permit where the [state] department [of Environmental Quality] determines that a toxic substance is or may be discharged into the waters of the state at a level that has the reasonable potential to cause or contribute to an excursion above any water quality value." MICH. ADMIN. CODE R § 323.1211.

41.     Under Michigan's reasonable potential implementation procedure, the state follows the statistical procedure for determining reasonable potential specified by the Guidance where fewer than ten representative, facility-specific effluent samples greater than the detection limit are available. MICH. ADMIN. CODE R § 323.1211(3)(b). The state follows an alternative statistical procedure for determining reasonable potential where ten or more representative, facility-specific effluent samples greater than the detection limit are available. *Id.* at Rule 1211(3)(a).

42.     A Great Lakes State's procedure for establishing compliance schedules must be "consistent with (as protective as)" Guidance Implementation Procedure 9. Procedure 9.

43.     If a permit establishes a schedule of compliance which exceeds one year from the date of permit issuance or modification, the schedule shall set forth interim requirements and

10

dates for their achievement. Procedure 9. The time between such interim dates either (1) may not exceed one year, or (2) if the time necessary for completion of any interim requirement is more than one year and is not readily divisible into stages for completion, the permit shall require, at a minimum, specified dates for annual submission of progress reports on the status of any interim requirements. *Id.*

44.     The State of Michigan adopted a compliance schedule implementation procedure. MICH. ADMIN. CODE R § 323.1217.

45.     Under Michigan's compliance schedule implementation procedure, a schedule of compliance which exceeds one year from the date of permit issuance or modification must "set forth interim requirements and dates for achievement of the requirements, as appropriate." MICH. ADMIN. CODE R § 323.1217(3).

46.     Michigan submitted its water quality standards, antidegradation policies, and implementation procedures to EPA.

47.     On August 4, 2000, EPA approved the state's variance, reasonable potential, and compliance schedule implementation procedures, among other things.  Identification of Approved and Disapproved Elements of the Great Lakes Guidance Submissions from the States of Michigan, Ohio, Indiana, and Illinois, and Final Rule, 65 Fed. Reg. 47,864, 47,866-67 (2000).

48.     On May 18, 2004, Michigan submitted to EPA a multiple discharger mercury variance.

49.     Michigan's multiple discharger mercury variance revises the state's water quality standards.

50.     Michigan's multiple discharger mercury variance is inconsistent with and less protective than Procedure 2 for the following reasons:

11

(a) Procedure 2 does not authorize the adoption of a multiple discharger variance or, in the alternative,

(b) Contrary to Procedure 2, Michigan's multiple discharger mercury variance does not require point sources with reasonable potential to cause or contribute to an excursion above the mercury criteria to comply with an effluent limitation which represents the level currently achievable ("LCA") by the permittees at the time the variance is granted, but with an effluent limitation of 10 ng/l. *See* Procedure 2, § F.1. & 2.

51.     Michigan's multiple discharger mercury variance revises the state's NPDES program.

52.     Michigan's multiple discharger mercury variance is inconsistent with and less protective than Procedures 5 or 9, or both, for the following reasons:

(a) Contrary to Procedure 5, when issuing or re-issuing a permit where the state has insufficient data to make a reasonable potential determination, Michigan's multiple discharger mercury variance authorizes the state to postpone the reasonable potential determination for as many as five years, until as many as sixty representative, facility-specific effluent samples greater than the detection limit are available.

(b) Contrary to Procedure 5, when issuing or re-issuing a permit where the state has insufficient data to make a reasonable potential determination, Michigan's multiple discharger mercury variance does not require the state to incorporate a mercury WQBEL or LCA limitation in the permit once the state determines that the permit has the reasonable potential to cause or contribute to an excursion above the mercury Tier I criterion, but instead requires the state merely to evaluate whether to incorporate a mercury WQBEL or LCA limitation in the permit.

(c) Contrary to Procedure 9, when re-issuing a permit without previous mercury limitations where the permit has the reasonable potential to cause or contribute to an excursion above the mercury Tier I criterion, Michigan's multiple discharger mercury variance authorizes the state to postpone compliance with a mercury WQBEL or LCA limitation until the third year of the permit, and does not require the state to set forth (1) interim requirements and dates for achieving them that do not exceed one year, or (2) specified dates for annual submission of progress reports on the status of any interim requirement that exceeds one year.

53.    On June 29, 2004, EPA approved Michigan's multiple discharger mercury variance.

54.    Plaintiffs have no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

(EPA Approval of the State of Michigan's variance implementation procedure violated the Clean Water Act, Procedure 2, and the APA, 5 U.S.C. § 706(2)(A))

55.    Plaintiffs re-allege each and every allegation contained in the foregoing paragraphs.

56.    Defendants violated the Clean Water Act in approving Michigan's variance implementation procedure because the procedure is inconsistent with the Act and its implementing regulations, especially Procedure 2.

57.    In approving Michigan's variance implementation procedure, Defendants acted in a manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A).

## SECOND CLAIM FOR RELIEF

(EPA Approval of the State of Michigan's multiple discharger mercury variance violated the Clean Water Act, Procedure 2, and the APA, 5 U.S.C. § 706(2)(A))

58.     Plaintiffs re-allege each and every allegation contained in the foregoing paragraphs.

59.     Defendants violated the Clean Water Act in approving the revision of Michigan's water quality standards, represented by the multiple discharger mercury variance, because the revision is inconsistent with the Act and its implementing regulations, especially Procedure 2.

60.     In approving the revision of Michigan's water quality standards, represented by the multiple discharger mercury variance, Defendants acted in a manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A).

### THIRD CLAIM FOR RELIEF

(EPA Approval of the State of Michigan's multiple discharger mercury variance violated the Clean Water Act, Procedure 5, and the APA, 5 U.S.C. § 706(2)(A))

61.     Plaintiffs re-allege each and every allegation contained in the foregoing paragraphs.

62.     Defendants violated the Clean Water Act in approving the revision of Michigan's NPDES program, represented by the multiple discharger mercury variance, because the revision is inconsistent with the Act and its implementing regulations, especially Procedure 5.

63.     In approving the revision of Michigan's NPDES program, represented by the multiple discharger mercury variance, Defendants acted in a manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A).

### FOURTH CLAIM FOR RELIEF

(EPA Approval of the State of Michigan's multiple discharger mercury variance violated the Clean Water Act, Procedure 9, and the APA, 5 U.S.C. § 706(2)(A))

64.     Plaintiffs re-allege each and every allegation contained in the foregoing

14

paragraphs.

65.    Defendants violated the Clean Water Act in approving the revision of Michigan's
NPDES program, represented by the multiple discharger mercury variance, because the revision
is inconsistent with the Act and its implementing regulations, especially Procedure 9.

66.    In approving the revision of Michigan's multiple discharger mercury variance,
represented by the multiple discharger mercury variance, Defendants acted in a manner that is
arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation
of the APA, 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request this court to grant the following relief:

67.    Declare that Defendants' August 4, 2000, decision approving the State of
Michigan's variance implementation procedure violated the Clean Water Act and its
implementing regulations, especially Procedure 2, and is arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. §
706(2)(A);

68.    Declare that Defendants' June 29, 2004, decision approving the State of
Michigan's revision of its water quality standards, represented by the multiple discharger
mercury variance, violated the Clean Water Act and its implementing regulations, especially
Procedure 2, and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance
with law, in violation of the APA, 5 U.S.C. § 706(2)(A);

69.    Declare that Defendants' June 29, 2004, decision approving the State of
Michigan's revision of its NPDES program, represented by the multiple discharger mercury
variance, violated the Clean Water Act and its implementing regulations, especially Procedure 5,
and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in

15

violation of the APA, 5 U.S.C. § 706(2)(A);

      70.     Declare that Defendants' June 29, 2004, decision approving the State of Michigan's revision of its NPDES program, represented by the multiple discharger mercury variance, violated the Clean Water Act and its implementing regulations, especially Procedure 9, and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A);

      71.     Issue an order reversing and remanding to Defendants their approval of the State of Michigan's variance implementation procedure and directing them to follow the steps outlined by the Clean Water Act and its implementing regulations in circumstances where a Great Lakes State fails to submit an implementation procedure that is consistent with the implementation procedure prescribed by the Act and its implementing regulations;

      72.     Issue an order reversing and remanding to Defendants their approval of the State of Michigan's revision of its water quality standards, represented by the multiple discharger mercury variance, and directing them to follow the steps outlined by the Clean Water Act and its implementing regulations in circumstances where the Regional Administrator disapproves a state submission of revised water quality standards;

      73.     Issue an order reversing and remanding to Defendants their approval of the State of Michigan's revision of its NPDES program, represented by the multiple discharger mercury variance;

      74.     Retain jurisdiction to ensure Defendants' compliance with the court's orders;

      75.     Award Plaintiffs their reasonable fees, costs, expenses, and disbursements, including reasonable attorney and expert witness fees, as authorized by 28 U.S.C. § 2412; and

      76.     Grant Plaintiffs such further and additional relief as the court deems just and proper.

Respectfully submitted,

Neil S. Kagan
Michigan Bar No. P58948
National Wildlife Federation
Great Lakes Natural Resource Center
213 West Liberty Street, Suite 200
Ann Arbor, Michigan 48104
(734) 769-3351

Attorney for Plaintiffs

DATED May 30, 2006

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| NATIONAL WILDLIFE FEDERATION; LONE TREE COUNCIL | STEPHEN L. JOHNSON, ADMINISTRATOR; GRANT NAKAYAMA, ACTING REGIONAL ADMINISTRATOR; U.S. ENVIRONMENTAL PROTECTION AGENCY |

**06-12423**

DAVID M. LAWSON
MAGISTRATE JUDGE BINDER

**(b)** County of Residence of First Listed Plaintiff   Washington, D.C.
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Neil S. Kagan, Senior Counsel
National Wildlife Federation, Great Lakes Natural Resource Center
213 West Liberty Street, Suite 200, Ann Arbor, Michigan 48104, (734)769-3351

Attorneys (If Known)
Alberto R. Gonzales, Attorney General
Office of the Attorney General, Department of Justice
10th & Pennsylvania Avenue, N.W., Washington, D.C. 20530

## II. BASIS OF JURISDICTION (Select One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☑ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Select One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Select One Box Only)

- ☑ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. Section 1251 et seq.

Brief description of cause:
Defendants approved Michigan's variance implementation procedure and a multiple discharger variance, contrary to the Clean Water Act.

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND:   ☐ Yes   ☑ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE                                DOCKET NUMBER

DATE
May 30, 2006

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

URSUANT TO LOCAL RULE 83.11

1.  Is this a case that has been previously dismissed?  ☐ Yes  ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.  Other than stated above, are there any pending or previously
    discontinued or dismissed companion cases in this or any other
    court, including state court? (Companion cases are matters in which
    it appears substantially similar evidence will be offered or the same
    or related parties are present and the cases arise out of the same
    transaction or occurrence.)  ☐ Yes  ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :